# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
Filed: June 19, 2014

| | | |
|---|---|---|
| * * * * * * * * * * * * * * | * | UNPUBLISHED |
| NATALIE ROWAN, | * | |
| | * | No. 10-272V |
| Petitioner, | * | |
| | * | |
| v. | * | Special Master Dorsey |
| | * | |
| SECRETARY OF HEALTH | * | Interim Attorneys' Fees and Costs; |
| AND HUMAN SERVICES, | * | Excessive Fees and Costs; |
| | * | Attorney's Hourly Rate; |
| Respondent. | * | Paralegal's Hourly rate; Expert |
| | * | Hourly Rate; Vague or Excessive |
| * * * * * * * * * * * * * * | | Time Entries. |

Patricia Ann Finn, Patricia Finn Esq., Piermont, New York, for petitioner.
Darryl R. Wishard, U.S. Department of Justice, Washington, DC, for respondent.

### DECISION AWARDING INTERIM ATTORNEYS' FEES AND COSTS[1]

I.  **Introduction**

On May 3, 2010, Natalie Rowan ("petitioner"), filed a petition under the National Vaccine Injury Compensation Program ("the Program")[2] alleging that she developed headaches, dizziness, abdominal pain, weight loss, and bronchial spasms as a result of the human papillomavirus vaccines ("HPV") she received on August 21, 2007, November 12, 2007, and July 14, 2008. Petition at 2. An entitlement hearing was held on January 14-16, 2014. The

---

[1] Because this decision contains a reasoned explanation for the undersigned's action in this case, the undersigned intends to post this decision on the website of the United States Court of Federal Claims, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899, 2913 (Dec. 17, 2002). As provided by Vaccine Rule 18(b), each party has 14 days within which to request redaction of any information furnished by that party that: (1) is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy. Vaccine Rule 18(b). Otherwise, the entire decision will be available to the public. Id.

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-1 to 34 (2006) ("Vaccine Act"). All citations in this order to individual sections of the Act are to 42 U.S.C. §300aa.

1

parties requested and were granted the opportunity to file post-hearing briefs.  The entitlement decision is not yet ripe for adjudication.

On March 7, 2014, petitioner filed a Motion for Interim Payment of Costs of Experts, Attorney's Fees, and Related Expenses and Costs ("Motion") to reimburse her counsel of record, Ms. Patricia Finn, for the hours and costs she expended on petitioner's behalf, and for the costs petitioner has personally incurred in pursuing her petition.  Motion at 1.  Petitioner requests a total of $59,837.85, in attorneys' fees, and $36,333.72, in litigation-related costs for a total interim award of $96,171.57.  Motion at 1-2.

Respondent is not raising an objection to an interim award of reasonable attorneys' fees and costs to petitioner in this case.  However, respondent makes four objections to the amounts petitioner has requested in the Motion on the ground that those amounts are unreasonable.  Respondent's Objections to Petitioner's Motion for Interim Payment of Costs of Experts, Attorney's Fees, and Related Expenses and Costs ("Resp't's Resp."), filed March 18, 2014, at 5-10.  Specifically, respondent asserts that petitioner's attorneys' asserted hourly rates and hours billed are excessive and unreasonable.  Resp't's Resp. at 5-10.  Respondent also contends that the hourly rate of petitioner's expert witness, Dr. Yehuda Shoenfeld, is excessive.  Id. at 11-12.  Respondent further argues that Dr. Shoenfeld's requested airfare lacks support and is excessive.  Id. at 12.

Petitioner filed a reply to respondent's objections.  Petitioner's Reply to Respondent's Objections to Petitioner's Motion for Interim Payment of Costs of Experts, Attorney's Fees, and related Expenses and Costs ("Pet'r's Reply"), filed March 26, 2014.  Petitioner asserted that she had demonstrated a reasonable basis for the claim, she would suffer an undue hardship if interim fees are not awarded, and that the amount requested by petitioner is justified.  Pet'r's Reply at 2-4.  Petitioner did not provide any additional exhibits or evidence with her reply to respondent's objections.

The matter is now ripe for adjudication.

## II.     Analysis

The undersigned finds that petitioner is entitled to an interim award of reasonable attorneys' fees and costs because the undersigned finds that she brought her petition in good faith and with a reasonable basis.  §300aa-15(e)(1).  Likewise, respondent has elected not to raise an objection at this time to petitioner's request for interim attorneys' fees and costs based on the undersigned's prior ruling awarding interim fees and costs.  See Resp't's Resp. at 2, fn. 2.  Thus, because petitioner has established she is entitled to receive attorneys' fees and costs, the remaining issue is the amount that petitioner is entitled to.

### A.     Applicable Legal Standards

Petitioner "bears the burden of establishing the hours expended."  Wasson v. Sec'y of Health & Human Servs., 24 Cl. Ct. 482, 484 (1991) (affirming special master's reduction of fee applicant's hours due to inadequate recordkeeping), aff'd after remand, 988 F.2d 131 (Fed. Cir.

2

1993) (per curiam).  Reasonable attorneys' fees are determined by "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate."  Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1347-48 (Fed. Cir. 2008) (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)).  Special masters have "wide discretion in determining the reasonableness" of attorneys' fees and costs, Perreira v. Sec'y of Health & Human Servs., 27 Fed. Cl. 29, 34 (1992), aff'd, 33 F.3d 1375 (Fed. Cir. 1994), and may increase or reduce the initial fee award calculation based on specific findings.  Avera, 515 F.3d at 1348.  The requirement that attorneys' fees be reasonable applies as well to costs.  Perreira, 27 Fed. Cl. at 34 ("Not only must any request for attorney's fees be reasonable, so must any request for reimbursement of costs").

In making reductions, a line-by-line evaluation of the fee application is not required.  Wasson, 24 Cl. Ct. at 484, rev'd on other grounds and aff'd in relevant part, 988 F.2d 131 (Fed. Cir. 1993).  Special masters may rely on their experience in the Program and its attorneys to determine the reasonable number of hours expended.  Id.  Just as "[t]rial courts routinely use their prior experience to reduce hourly rates and the number of hours claimed in attorney fee requests . . . [v]accine program special masters are also entitled to use their prior experience in reviewing fee applications."  Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993).

### B.  Reasonable Attorneys' Fees and Costs

Petitioner's motion will be discussed in the order of respondent's objections and petitioner's responses to those objections.

### 1. The hourly rate of $400 sought for Ms. Finn and Mr. Victor

As a general rule, a reasonable hourly rate is "'the prevailing market rate,' defined as the rate 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'"  Avera, 515 F.3d at 1348 (quoting Blum, 465 U.S. at 896).  The lodestar approach involves a two-step process.  First, a court determines an "initial estimate . . . by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'"  Id. at 1347-48 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)).  Avera held that the forum rate generally applies unless an attorney has not spent the bulk of his or her time in DC on the case and the local geographic market rate for the attorney is very significantly below the DC rate.  Avera at 1348-49 (citing Davis Cnty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. E.P.A., 169 F.3d 755, 758 (D.C. Cir. 1999)).  Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings.  Id. at 1348.

Petitioner seeks an hourly rate of $400 for her attorneys, Ms. Patricia Ann Finn and Mr. Jonathan Matthew Victor, for the hours expended from 2012 to 2014.  Motion at 4.  Petitioner claims that the hourly rate is calculated by using the "lodestar approach taking into account the fact that petitioner's counsel is located in a suburb of New York City and counsel's substantial expertise in vaccine injury cases."  Id.

3

Respondent contends that there is no further support for the reasonableness of the local hourly rate sought by petitioner. Resp't's Resp. at 6. Furthermore, respondent states that she is not aware of any attorney in the Vaccine Program being awarded $400.00 per hour, and that neither Ms. Finn's nor Mr. Victor's experience justifies such an inflated rate. Id. Ms. Finn has been admitted to practice in New York since 2003 and Mr. Victor has been admitted to practice in New York since 2009. Id. Mr. Victor had been practicing for less than two years at the time the petition in this case was filed. Id. Respondent asserts that the appropriate hourly rate for Ms. Finn is $200 per hour for work performed in 2010 and 2011, and $210 per hour for work performed from 2012 to 2014. Id. at 11. Respondent asserts that an hourly rate for Mr. Victor would be less, "given that he started working on petitioner's case less than two years after admission to the bar." Id.

In her response, petitioner maintains that an hourly rate of $400 is justified because Ms. Finn has been practicing law for about ten years, with 80% of her cases involving vaccine injury. Pet'r's Reply at 3. Petitioner further argues that other attorneys cited by respondent "have nowhere near Ms. Finn's experience in vaccine injury litigation," id., and that Mr. John F. McHugh, whose hourly rate of $335 in vaccine cases is used as a comparison, "commonly referred to as a vaccine injury attorney [] does not even have vaccine injuries listed among his areas of practice on his Martindale profile." Id.

First, the undersigned finds that petitioner's counsel is entitled to the forum rate in Washington, DC, rather than the local geographic hourly rate in New York City. Pursuant to Avera, the forum rate applies unless the bulk of the attorney's work is performed outside the forum in a location where the attorney's hourly rate is very significantly lower. In Rodriguez v. Sec'y of Health & Human Servs., No. 06-559V, 2009 WL 2568468, at *23-24 (Fed. Cl. Spec. Mstr. July 27, 2009), petitioner's counsel was Mr. John F. McHugh, an attorney with 20 years of experience located in New York City. The Special Master determined that the DC forum rates applied and awarded Mr. McHugh the attorney hourly rates in the amount of $310 for 2006, $320 for 2007, $335 for 2009, and $340 for 2010 and 2011. Id.

Second, special masters may make an upward or downward departure from the initial calculation of the fee award based on specific findings. Avera at 1348. In the absence of sufficient proof, special masters may rely on their own experience and use their discretion to establish a reasonable fee. See Ceballos v. Sec'y of Health & Human Servs., 2004 WL 784910, at *27. In Ceballos, an attorney with over 30 years of experience in Philadelphia was awarded a $250 hourly rate for 1999 to 2003. Id. at *27. In Rupert, two attorneys located in Boston and who regularly practice in the Program, were awarded hourly rates of $250 and $210. See Rupert v. Sec'y of Health & Human Servs., 52 Fed. Cl. 684, 688-89 (2002).

Petitioner's argument that other attorneys in the Program do not have the same experience as she and the fact that Mr. McHugh does not list vaccine injuries in his area of expertise is not persuasive. The undersigned is not aware of using information from Martindale-Hubbell as the sole mechanism in determining reasonable hourly rates. And, Mr. McHugh has had more than three times the number of cases in the Program as Ms. Finn. Petitioner also did not cite to any precedent setting forth rates that are comparable to those she seeks here.

4

Petitioner also did not discuss why Mr. Victor, who has much less experience in Program cases, is also entitled to $400 per hour. The undersigned finds that an hourly rate of $400 for both Ms. Finn and Mr. Victor is excessive.

In addition, the undersigned notes that in Dimatteo v. Sec'y of Health & Human Servs., No. 10-566V, 2014 WL 1509320, at *6 (Fed. Spec. Mstr. Mar. 27, 2014), the special master awarded Ms. Finn the hourly rate of $300 per hour, and Mr. Victor was awarded $220 per hour. While not binding in this decision, the undersigned has considered this decision in the amount that is being awarded to Ms. Finn and Mr. Victor.

After reviewing Ms. Finn's years of experience, reputation, and skill, and comparing this with other attorneys with comparable factors, the undersigned finds that an hourly rate of $300 will reasonably reflect Ms. Finn's work from 2010 to 2011. Adjusted for inflation, Ms. Finn's hourly rate from 2012 to 2014 will be $310. A reasonable hourly rate for Mr. Victor would be $210 from 2010 to 2011 and $220 from 2012 to 2014, based on his expertise and skills.

### 2. JL's Hourly Rate

Petitioner seeks an hourly rate of $175.00 for the time "JL" spent throughout the course of this matter. See, e.g., Petitioner's Exhibit 1 to Motion at 4-6, 9-15. Respondent objects that this rate is unreasonably high. See Resp't's Resp. at 10. Respondent asserted that "JL" is believed to be Jessica Lucas. Id. Respondent further contends that Ms. Lucas "is not licensed to practice law in any state, and thus, she should not be awarded an attorney rate." Id. In addition, respondent points out that Ms. Lucas's "work appears to be in the nature of paralegal work." Id. Respondent notes that the special master in Garcia awarded paralegals in New York City an hourly rate of $95. Id. (quoting Garcia v. Sec'y of Health & Human Servs., No. 107-286V, 2011 WL 6941702, at *12 (Fed. Cl. Spec. Mstr. Dec. 12, 2011)). Petitioner maintains that Ms. Lucas's requested hourly rate is justified because she "holds a Juris Doctor and has been extensively involved in assisting Ms. Finn in vaccine injury litigation for the last five years." Petitioner did not respond to respondent's assertions that Ms. Lucas is not licensed to practice law in New York and that Ms. Lucas acts as a paralegal in Ms. Finn's firm.

The undersigned finds that, pursuant to Garcia, $95 per hour is reasonable for work performed by Ms. Lucas in 2010 and 2011, and $100 per hour is reasonable for work performed from 2012 to 2014.[3]

### 3. The Number of Hours Expended

Respondent objects to four specific categories of invoice entries as "excessive, duplicative, vague, unsupported, and/or unreasonable." Resp't's Resp. at 10-11. Petitioner did

---

[3] Petitioner originally requested $8,837.50 total for Ms. Lucas's time (50.5 hours billed at $175/hr). With the reduction in hourly rate, the new amount awarded for Ms. Lucas's time is 7.1 hours billed at $95/hr ($674.50), plus 43.4 hours billed at $100/hr ($4,340) for a total of $5,014.50. This results in a reduction of $3,823.00.

5

not respond to any of these objections in her response. The four objections are discussed in detail below.

### a. Status conferences on June 3, 2010, November 10, 2010, October 5, 2011, December 12, 2011, June 5, 2012, and March 26, 2013.

In total, petitioner has requested reimbursement for 10.3 hours[4] that Ms. Finn and others spent preparing for and attending status conferences on the above dates. Of these hours, 3.9 hours accounted for Ms. Finn's work in 2010 and 2011, and 1.4 accounted for her work in 2012 and 2013; 2.8 accounted for Mr. Victor's work in 2010 and 2011, and .9 accounted for his work in 2012 and 2013; and .8 hour accounted for Ms. Lucas's work in 2010 and 2011, and .5 hour accounted for her work in 2012 and 2013.

Respondent contends that "billing for multiple attorneys to attend telephone status conferences with the court and/or intra-office conferences was duplicative." Resp't's Resp. at *12 (citing Thomas v. Sec'y of Health & Human Servs., No. 12-309V, 2013 WL 5718948, at *5 (Fed. Cl. Spec. Mstr. Sept. 26, 2013), and Krause v. Sec'y of Health & Human Servs., No. 01-93V, 2013 WL 4477431, at *6 (Fed. Cl. Spec. Mstr. June 20, 2012)). Petitioner offered no further explanation or proof in her response as to what the entries on these six dates were for.

The undersigned finds that the attendance of multiple attorneys and staff on these status conferences as well as in the preparation for the status conferences is duplicative. While in some circumstances, it may be reasonable for more than one attorney to attend and prepare for a status conference, petitioner has not provided any explanation for the undersigned to evaluate whether the use of multiple attorneys and a paralegal was justified. The undersigned will compensate only Ms. Finn for attending and preparing for these status conferences.

### b. Two attorneys and one paralegal participated in a telephone conference with petitioner on May 8, 2012.

Ms. Finn requested reimbursement for 1.2 hours that was spent on this call, including .4 hours each by Ms. Finn, Mr. Victor, and Ms. Lucas.

Respondent objects to petitioner's counsel's telephone conference with petitioner based on the same reasoning as above. Resp't's Resp. at 10-11. Without any explanation for billing for multiple attorneys and the paralegal to attend telephone status conferences, the undersigned finds it difficult to assess whether this entry is reasonable.

---

[4] 1.3 hours were spent in preparation for and participating in the June 3, 2010 status conference (Invoice #68); 2.8 hours were spent on the November 10, 2010 status conference (Invoice #69); 1.6 hours were spent on the October 5, 2011 status conference (Invoice #70); 1.8 hours were spent on the December 12, 2011 status conference (Invoice #70); .8 hour was spent on the June 5, 2012 status conference (Invoice #72); and 2 hours were spent on the March 26, 2013 status conference (Invoice #75).

The amount of time spent communicating with a client must be reasonable and "is decided on a case-by-case basis" with consideration given to the complexity of the legal issues involved. Carter v. Sec'y of Health & Human Servs., No. 04-150V, 2007 WL 2241877 (Fed. Cl. Spec. Mstr. July 13, 2007). The burden is on petitioner to prove that the time spent communicating with the client should be compensated. Carter, at *7 (citing Lilienthal v. City of Suffolk, 322 F. Supp. 2d 667, 673 (E.D. Va. 2004)). Petitioner has failed to meet the burden of proof. The undersigned therefore will compensate only Ms. Finn for her time.

### c. Ms. Finn has billed at an attorney rate for administrative tasks such as organizing medical records, scheduling status conferences and assembling documents in 2010.

Respondent contends that administrative tasks such as organizing medical records, scheduling status conferences, and assembling documents should not be billed at an attorney rate. Resp't's Resp. at *11 (citing Doe/11 v. Sec'y of Health & Human Servs., No. XX-XXX, 2010 WL 529425, at *9-10 (Fed. Cl. Spec. Mstr. Jan. 29, 2010); Anderson v. Sec'y of Health & Human Servs., No. 06-168V, 2007 WL 4527545, at *1-2 (Fed. Cl. Spec. Mstr. Nov. 28, 2007) (reducing the fees sought for administrative tasks performed by attorneys)). In Doe, the special master applied paralegal rates for the time spent by an attorney performing those tasks because these tasks were administrative in nature. Id. at 9. The undersigned finds that applying the full amount of the attorney rate for Ms. Finn's time in this category would be excessive.

In total, Ms. Finn requests reimbursement at an attorney rate for 4 hours[5] of work on administrative tasks in 2010. The undersigned hereby adjusts the requested hourly rate from $400 for administrative tasks performed by Ms. Finn and Mr. Victor to $95 an hour.

### d. Ms. Finn has billed 14 hours for "LL" on December 26, 2013, for "preparation of materials for hearing."

Respondent objects to a 14-hour billing entry by one "LL" on December 26, 2013 (as noted on Invoice # 78). Ms. Finn has offered no explanation in support of this billing entry.

Based on the outstanding record, the undersigned is unable to identify "LL." Moreover, in the absence of a detailed explanation, the undersigned finds that the amount of time L.L. spent on this broad category of work is unreasonable because it is impossible to determine how LL's work advanced petitioner's case. Simply indicating that a huge block of time was expended is insufficient to demonstrate reasonableness. Ms. Finn's billing records should reflect what was done in detail. The undersigned therefore determines that this entry is uncompensable. This results in a reduction of $5,600 from petitioner's Motion.

---

[5] According to Invoices #67 and #69, Ms. Finn spent 2.25 hours organizing medical records on March 2, 2010, which will be billed at $95/hr ($213.75); Mr. Victor spent .8 hours on April 29, 2010 assembling pleadings, .75 organizing medical records on May 10, 2010, .1 hour scheduling a status conference on May 26, 2010, and .1 hour scheduling a status conference on November 2, 2010, for a total of 1.75 hrs which will be billed at $95/hr ($166.25).

### 4. Dr. Shoenfeld's Hourly Rate

Respondent objects to an award of compensation for the work Dr. Shoenfeld performed in this case on the ground that his hourly rate of $500 is excessive. Resp't's Resp. at 11-12. Respondent contends that petitioner filed no evidence in support of Dr. Shoenfeld's hourly rate beyond Dr. Shoenfeld's curriculum vitae. Id. at 11. In response, petitioner maintains that Dr. Shoenfeld's hourly rate is reasonable. Pet'r's Reply. at 3. Petitioner contends that finding an expert witness is difficult because "the vast majority of doctors support vaccination and are unwilling to provide expert testimony supporting theories of vaccine injuries." Id.

The reasonableness of an expert's rate is determined on a case-by-case basis, and it is petitioner's burden to offer evidence for the rate charged. See Simon v. Sec'y of Health & Human Servs., No. 05-914V, 2008 U.S. Claims LEXIS 67, at *5 (Fed. Cl. Spec. Mstr. Feb. 21, 2008). Dr. Shoenfeld previously has been awarded an hourly rate of $350 in other vaccine cases from 2009 to 2011. See, e.g., Gruber v. Sec'y of Health & Human Servs., No. 00-749V, 91 Fed. Cl. 773, 798 (2010); Sabella v. Sec'y of Health & Human Servs., 86 Fed. Cl. 201, 220-21 (Fed. Cl. 2009); Valdes v. Sec'y of Health & Human Servs., No. 99-310V, at 5 (2009); Crutchfield v. Sec'y of Health & Human Servs., No. 09-39V, 2011 WL 3806351, at *8-9 (Fed. Cl. Spec. Mstr. Aug. 4, 2011).

In the absence of information beyond Dr. Shoenfeld's curriculum vitae, the undersigned finds that $400 represents a reasonable hourly rate for Dr. Shoenfeld. This results in a reduction of $4,200 from petitioner's Motion.

The undersigned also agrees with respondent that Dr. Shoenfeld should be awarded half of his hourly rate ($200) for the 28 hours he spent traveling. Respondent did not object to any other entries.

### 5. Dr. Shoenfeld's Airfare

Respondent objects to Dr. Shoenfeld's $4,741.92 airfare cost from Tel Aviv, Israel to Washington, DC, for the hearing via Lufthansa Airlines. Respondent contends that roundtrip coach airfare was around $2,000 for the same flights taken by Dr. Shoenfeld on the same days of the week in March 2014. Resp't's Resp. at 12. Petitioner offered no additional explanation in her response.

Based on a review of documentation submitted by petitioner for Dr. Shoenfeld's airfare, the undersigned finds that Dr. Shoenfeld's airfare is reasonable. This cost will be reimbursed.

### III. Conclusion

Attorneys' fees and costs are awarded as follows:

| | | | |
|---|---|---|---:|
| **1. Patricia Finn** | 20.6 hrs @ $300 an hour: | $ | **6,180.00** |
| | 61.8 hrs[6] @ $310 an hour: | $ | **19,158.00** |
| | 2.25 hrs @ $ 95 an hour: | $ | **213.75** |
| **2. John Victor** | 7 hrs @ $210 an hour: | $ | **1,470.00** |
| | 16.1 hrs @ $220 an hour: | $ | **3,542.00** |
| | 1.75 hrs @ $ 95 an hour: | $ | **166.25** |
| **3. Jessica Lucas** | 6.3 hrs @ $95 an hour: | $ | **598.50** |
| | 42.5 hrs @ $100 an hour: | $ | **4,250.00** |
| **4. LL** | **14** hrs @ $400 an hour: | $( | **5,600.00)** |
| | **(deduction)** | | |
| | **Total Attorneys' Fees Awarded:** | $ | **35,578.50** |
| | **Total Attorneys' Fees Requested:** | $ | **59,837.85** |
| | **Difference:** | $ | **(24,259.35)** |
| **5. Dr. Shoenfeld** | **42** hrs @ $400 an hour: | $ | 16,800.00 |
| | **28** hrs @ $200 an hour: | $ | 5,600.00 |
| | Airfare Cost Awarded: | $ | 4,741.92 |
| | Other Costs: | $ | 3,591.80 |
| | **Total Expert Fees and Costs Awarded:** | $ | **30,733.72** |
| | **Total Expert Fees and Costs Requested:** | $ | 36,333.72 |
| | **Difference (Reduction):** | $ | (5,600.00) |
| **Total Amount of Fees and Costs Awarded:** | | $ | **66,312.22** |
| **Total Reduction from Petitioner's Motion:** | | $ | **(29,859.35)** |

A total of $29,859.35, is reduced from petitioner's Motion. Accordingly, a total of **$66,312.22**, shall be awarded in the form of a check payable jointly to petitioner and petitioner's counsel, Patricia Finn.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court **SHALL ENTER JUDGMENT** in accordance with this decision unless a motion for review is filed.[7]

---

[6] There was one entry for Ms. Finn billed at $175.00 an hour on Invoice #70. This rate is billed at $310 an hour.

9

**IT IS SO ORDERED.**

<u>s/Nora Beth Dorsey</u>
Nora Beth Dorsey
Special Master

---

[7] Pursuant to Vaccine Rule 11(a), the parties can expedite entry of judgment by each party filing a notice renouncing the right to seek review.